## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**SIYESHA FULWOOD,**

> **Plaintiff,**

**v.**                                                    **Case No.  8:09-cv-378-T-30EAJ**

**CAPITAL ONE AUTO FINANCE, INC.,**
**et al.,**

> **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. 55), Plaintiff's Response in opposition (Dkt. 62), and Defendants' Reply (Dkt. 73).  The Court, having considered the motion, response, reply, and record evidence, concludes that the motion should be granted and final summary judgment should be granted in favor of Defendants and against Plaintiff.

## BACKGROUND

Defendant Capital One Auto Finance, Inc. ("Capital One") is a finance company primarily engaged in financing automobile transactions.  Plaintiff, an African-American female, began her employment at Capital One as a Risk Specialist on or about December 2, 2002.  On March 7, 2007, Plaintiff made an internal complaint alleging that her co-worker Nicole Martinez subjected fellow co-worker Ismael Tavarez to harassment based upon his national origin (Dominican Republic).  Specifically, Plaintiff sent an e-mail to Patrick

Knowles, her supervisor, stating that Martinez was "creating a hostile work environment." (Dkt. 55-2). Plaintiff outlined examples of Martinez's behavior in the e-mail, which discussed generally rude and offensive behavior on the part of Martinez.[1] Regarding Martinez's hostility based on race, Plaintiff stated that Martinez told Tavarez that "the Dominican Republic is dirty," and that "all Dominicans are dirty" and "stupid." *Id.* Plaintiff also told Knowles that Martinez was argumentative towards her and made her uncomfortable. Knowles was also aware that Plaintiff and Martinez did not get along.

Capital One investigated Plaintiff's complaint by interviewing Plaintiff, Tavarez, and Martinez. During the investigation, Tavarez stated that after he told Martinez to quit playing around, because he did not take the remarks as her playing around, Martinez said that she was just "playing" and did not make any further offensive remarks to him. Tavarez said he was "surprised about the remarks but [he] also understood that she really wasn't thinking when she said them." (Pl. Dep. Vol. 1; Ex. 5).

Martinez admitted making remarks about Dominicans in response to Tavarez's joking reference to her as a "lazy Puerto-Rican," but explained that she was just teasing Tavarez whom she considered a friend. (Continued Dep. of Martinez 30-31).

Capital One placed Martinez on final warning on March 20, 2007, in response to its investigation of Plaintiff's complaint about Martinez's comments. Martinez also lost $1,000

---

[1] For example, Plaintiff's e-mail stated that Martinez "tormented" a male co-worker by writing all the things she hated about him on a six foot board, called another female co-worker a "fat pig," referred to a male senior manager as "short," and told Plaintiff that Plaintiff's hair was "ugly." Plaintiff also stated that Martinez referred to a customer as a "F*cking asshole," screamed at people, and talked to other people about how Plaintiff was not doing her job.

in educational assistance payments from Capital One as a result of being placed on final warning.  At some point, Knowles also moved Martinez, so that she and Plaintiff were not sitting in the same area.

A few months later, Capital One provided Plaintiff leave beginning on June 11, 2007, to seek counseling for what she described as emotional issues.[2]  Plaintiff stated that she suffered from anxiety as a result of Martinez's behavior and was unable to work.  Capital One's disability insurer, Aetna, denied Plaintiff's claim for short term disability benefits on August 20, 2007, finding that Plaintiff failed to show that she was unable to perform the material duties of her occupation.  Plaintiff's leave expired September 18, 2007.  Although unclear from the record presented to the Court, it appears that Defendant placed Plaintiff on leave under the Family Medical Leave Act after her short term disability benefits were denied.

Martinez was out on maternity leave from July 25, 2007 until December 11, 2007.  Plaintiff did not return to work after September 18, 2007.  According to Plaintiff, she was still suffering from anxiety-related issues and did not want to work in a hostile work environment.

Plaintiff was terminated on March 26, 2008, by Capital One Unit Manager George Springer for job abandonment.  During this time, Knowles was no longer working in the

---

[2] Plaintiff's medical records demonstrate that she was suffering anxiety, body shaking and weakness, a knot in her stomach, increased blood pressure and heart rate, and began crying to and from work.

Tampa office.  Specifically, from August 2007 until July 2010, he worked in the Plano, Texas office.

The record is undisputed that Plaintiff did not ever seek to return to work or seek any kind of transfer to a different department or division away from Martinez.  According to Plaintiff, she checked in with Knowles and Springer almost daily during her absence and made it clear that she did not want to work in a hostile work environment and that Martinez should be fired.

According to Plaintiff, since her leave in June of 2007, she has been unable to work and has been instructed by her doctor not to work.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 26, 2008, alleging that Capital One subjected her to a racially hostile work environment and terminated her employment in retaliation for her internal complaint about Martinez's alleged harassment of Tavarez.[3]  The EEOC issued an "unable to conclude" finding on December 2, 2008.  Plaintiff filed the instant suit on February 23, 2009.

## **DISCUSSION**

### I.    **Summary Judgment Standard**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

_____

[3] Plaintiff's complaint, however, did not include a retaliation claim.

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson*,  477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248;

*Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question.  *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.    Plaintiff's Claim of Race Discrimination

Defendant moves for summary judgment on Plaintiff's wrongful discharge claims under Title VII and Section 1981.  Specifically, Plaintiff claims that her March 26, 2008 termination for job abandonment was the result of unlawful race discrimination.

When the record fails to reflect any direct evidence of race discrimination, as is the case here, these claims are governed by the familiar burden-shifting scheme set forth under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998) (Title VII and § 1981 "have the same requirements of proof and use the same analytical framework.").

Plaintiff may survive summary judgment by establishing a prima-facie case that she was (1) a qualified member of a protected class; (2) subject to an adverse-employment action; and (3) treated less favorably than a similarly situated individual outside the protected class. *See Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004). Once Plaintiff shows these elements, the burden shifts to Defendants (the employer) to articulate a legitimate and non-discriminatory reason for the adverse action.  *Id.*  If Defendants can articulate one or more non-discriminatory reasons, "then the presumption of discrimination

is rebutted, and the burden of production shifts to [Plaintiff] to offer evidence that the alleged reason ... is pretext for illegal discrimination." *Wilson,* 376 F.3d at 1087.

Here, although the record reflects that Plaintiff is a member of a protected class and was subjected to an adverse-employment action, Plaintiff's claim fails because the record is undisputed that she was not qualified for the job and was not treated less favorably than a similarly situated individual outside the protected class.

The record is clear that Plaintiff was unfit to return to work at the time of her termination and has been unable to work anywhere for more than three years after her last day of work at Capital One on June 11, 2007. *See Pittman v. Moseley, Warren, Prichard & Parrish*, 2002 WL 2007880, *5 (M.D. Fla. 2002).

The record also reflects a complete lack of evidence that Plaintiff was treated less favorably than a similarly situated individual outside the protected class. Indeed, Plaintiff was asked the following question during her deposition: "Can you name any white employees who were out on leave as long as you were who were not terminated," and Plaintiff answered "No [sic] that I can recall at this time." (Pl. Dep., Vol. II, 231:22-25); *see also* (Pl. Dep., Vol. 1, 168). And Plaintiff has not presented any other evidence of disparate treatment that would give rise to an inference of intentional discrimination or that her race was the but-for cause of her termination. *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.").

Also fatal to Plaintiff's claims is that even assuming, for the sake of argument, that she could present a prima facie case of race discrimination, the record reflects a nondiscriminatory reason for her termination, job abandonment, and Plaintiff has not demonstrated any evidence of pretext, other than her own supposition and suspicions that the termination was based on some kind of racial animus.  Importantly, although the Court is to accept the facts in a light most favorable to Plaintiff, as it has done here, Plaintiff's own evaluation and opinion is not a sufficient basis to establish pretext.  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *Holifield*, 115 F.3d at 1565.[4]

## III.   Plaintiff's Claim of Hostile Work Environment

Defendant moves for summary judgment on Plaintiff's harassment claims under Title VII and Section 1981.  Specifically, Plaintiff claims that her work environment was riddled with instances of race based harassment by co-workers.

In order to establish a hostile work environment under Title VII and Section 1981, Plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and

---

[4] Plaintiff's response points out that she stated during her deposition that Knowles told another employee he was going to fire Plaintiff because he was upset that Plaintiff embarrassed him among his peers by complaining about a hostile atmosphere in March 2007.  Even assuming this is true, this does not show that Plaintiff's race was the but-for cause of her termination one year later.  Also, Plaintiff presented no evidence that Knowles played any role in her termination.  To the contrary, Knowles was working in the Texas office during that time and the record reflects that Springer made the termination decision after consulting with Human Resources about Plaintiff's prolonged absence/leave.

create a discriminatorily abusive working environment; and (5) a basis for holding Defendants liable. *Morven v. Progress Energy, Inc.*, 2008 WL 3243860, *3 (M.D. Fla. 2008); *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1275 (11th Cir. 2002).  In prosecuting such a claim, the employee must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990) (disparate treatment case).

Before allegedly harassing statements and conduct can be considered in determining whether the severe or pervasive requirement is met, such statements and conduct must be shown to have been based upon race.  *See Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 583 (11th Cir. 2000) (sexual harassment case).  Accordingly, "[i]nnocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party [ ], are not counted.  Title VII, as it has been aptly observed, is not a 'general civility code.'"  *Id.* Furthermore, teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment.  *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (*citing Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

Plaintiff testified that she witnessed the following alleged instances of race based harassment by co-workers Martinez and Amber Johnson: (1) Martinez made three comments about Dominicans being "dumb" and "dirty" to co-worker Tavarez; (2) Martinez said "nigger

naps" once in her presence[5]; (3) Martinez said her hair was "nappy"; (4) co-worker Johnson said: "My dog hates people with dark skin.  If you come to my house it will eat you up." Notably, Plaintiff testified that these incidents occurred on or after her March 7, 2007 complaint.

Plaintiff also stated that former co-worker Jason Moriarty[6] in 2003 or 2004 committed the following race based harassment: (1) displayed a "noose" made of rubber bands above his desk; (2) referred to an Hispanic manager as "Pedro"; (3) said he did not think people with dark skin were attractive; and (4) indicated that African-American co-worker Janice Freeman was disappointed that her son Mark "came out so dark."  Notably, Plaintiff did not include any of the events related to Moriarty in her March 7, 2007 complaint to Knowles or in her Charge of Discrimination.   And her Charge of Discrimination states that she experienced discrimination from January 1, 2007 to March 27, 2008.  Plaintiff also did not indicate a continuing violation in her Charge of Discrimination.  Accordingly, the allegations related to Moriarty are time barred.[7]   Notably, the incidents are not only separated by

_____

[5] Notably, this claim is not included in Plaintiff's March 7, 2007 e-mail and Plaintiff acknowledges that she never reported this claim.

[6] Moriarty was terminated on February 28, 2005.

[7] It is well-settled that prior to filing a lawsuit under Title VII, a claimant must first exhaust all administrative remedies.  In deferral states such as Florida, these administrative remedies include filing an administrative charge of employment discrimination with the EEOC within 300 days of the alleged violation.  42 U.S.C. 12101, et seq.; *Cotton v. Martin County, Fla.*, 306 F. Supp. 2d 1182, 1185 (S.D. Fla. 2004); 29 U.S.C. 626(d); *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1291 (11th Cir. 2002).  Thus, if a complaint indicates a Title VII claim accrued more than 300 days prior to the filing of the charge, it is time-barred.  *Clarke v. Winn-Dixie Stores, Inc.*, 2007 WL 3011018 (S.D. Fla.).

significant periods of time, but they are also separated by the intervening act of Moriarty's termination.  *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

Plaintiff also states in her response that African American co-worker Mark Freeman testified that at some point in 2006 another African American co-worker Ray Arce frequently used the "nigger" word.  Freeman testified that Arce only used the word in Freeman's presence as a form of slang, like "man" or "bro."  Notably, the allegations as to Freeman were also not alleged in Plaintiff's Charge of Discrimination and there is nothing in the record suggesting that anyone other than Freeman heard Arce's use of the "nigger" word.

Accordingly, the non-time-barred facts cited by Plaintiff to support her hostile work environment claim are insufficient to meet the "severe or pervasive" requirement.  Indeed, an isolated statement (or two), standing alone, even if based upon a protected characteristic, is not sufficiently severe or pervasive so as to form the basis of a hostile environment claim. *See Enwonwu v. Fulton-Dekalb Hosp. Auth.,* 286 Fed.Appx. 586 (11th Cir. 2008); *see also Harrington v. Disney Reg'l Entm't, Inc.,* 276 Fed.Appx. 863 (11th Cir. 2007) (finding no severe or pervasive harassment where, over the course of five months, a manager described Plaintiff as "ghetto" and, within the plaintiff's earshot, told several African American employees they looked like monkeys).

The "severe or pervasive" element of hostile work environment claims contains both subjective and objective components. *Mendoza,* 195 F.3d at 1246. With respect to the subjective component, the employee must personally perceive the harassment as severe or pervasive. *Id.* To establish the objective component, the environment must be one that a

reasonable person in the employee's position would find hostile or abusive. *Id.* Four factors are important in analyzing whether harassment objectively altered the terms and conditions of the employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance. *Id.* Courts must consider the alleged conduct in context and cumulatively, looking at the totality of the circumstances. *Id.* at 1242.

The conduct Plaintiff points to, even assuming it was racially motivated, was neither physically threatening nor humiliating. While Martinez's and Johnson's comments were clearly offensive, they were not so objectively humiliating as to be "severe," even if Plaintiff felt it was subjectively so. *See Miller,* 277 F.3d at 1276-77 (finding that conduct is objectively severe only when the workplace is *permeated* with intimidation, ridicule and insult) (emphasis added). Neither can Martinez's racially-neutral conduct of trying to discredit Plaintiff and Martinez's racially-neutral intimidating behavior of acting aggressively, telling Plaintiff she is ugly, dumb, and that no one likes her, constitute sufficiently severe misconduct. *See Smithers v. Wynne,* 319 Fed.Appx. 755 (11th Cir. 2008) (holding "office gossip," including derogatory comments about the plaintiff, not objectively severe conduct). The conduct merely constitutes the kind of ordinary tribulations of the workplace, albeit harsh and insensitive, that is not actionable under Title VII. *See Gupta,* 212 F.3d at 587.

And, although Arce's use of the word "nigger" was clearly offensive, Plaintiff has not established that it resulted in a hostile work environment.  The record is undisputed that Arce, an African-American, only used the word around Freeman, an African-American, as a form of slang.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim because Plaintiff has not presented sufficient evidence to show either that the alleged harassment was based on race or that it was severe or pervasive when looking at the totality of the circumstances.[8]

## IV.    Plaintiff's Intentional Infliction of Emotional Distress Claim

Under Florida law, Plaintiff must identify reckless and outrageous conduct that caused emotional distress in order to prevail on her intentional infliction of emotional distress claim. *De La Campa v. Grifols America, Inc.*, 819 So. 2d 940, 943 (Fla. 3d DCA 2002). "Outrageous" conduct is that which is so extreme that it goes beyond all possible bounds of decency. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985).  Liability does not extend to mere insults, indignities, or threats.  *Williams v. Worldwide Flight Servs.*, 877 So. 2d 869, 870 (Fla. 2d DCA 2004).

---

[8] Notably, this Court's conclusion would not change even if it did consider Moriarty's conduct in 2003-2004, because these acts were not sufficiently severe or pervasive. *See Barrow v. Georgia Pacific Corp.*, 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (upholding summary judgment for employer finding that alleged racial harassment which included racial slurs, displays of the rebel flag on tool boxes and hard hats, the letters "KKK" on a bathroom wall, and a noose in another employee's locker was not sufficiently severe or pervasive).

Here, even taking all of Plaintiff's allegations of Defendants' actions towards her as true, they fall woefully short of establishing an intentional infliction of emotional distress claim under Florida law.  *See Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573-75 (11th Cir. 1993); *Brown v. Zaveri*, 164 F. Supp. 2d 1354, 1363 (S.D. Fla. 2001).

Accordingly, Defendants are entitled to summary judgment on this claim.

## V.    Plaintiff's Remaining Claims of Retaliation and "Ethnic Intimidation"

Plaintiff's remaining claims of retaliation and ethnic intimidation have been abandoned by Plaintiff.  However, even based on the merits, these claims would fail for the reasons already set forth herein.[9]

It is therefore ORDERED AND ADJUDGED that:

1.    Defendants' Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. 55) is hereby GRANTED.

2.    The Clerk is directed to enter Final Summary Judgment in favor of Defendants and against Plaintiff.

---

[9] Notably, Plaintiff's "ethnic intimidation" claim must fail because no such cause of action exists in Florida.  Also, Plaintiff's complaint does not include a retaliation claim and, even if it did, Plaintiff's failure to establish pretext is fatal to such a claim, among other things, such as the failure to prove a causal nexus between her March 2007 complaint and March 2008 termination.

3.      The Clerk is directed to close this case and terminate any pending motions as

moot.

**DONE** and **ORDERED** in Tampa, Florida on March 22, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-378.msj55.frm